```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANUEL ARIAS, et al., | |
| Plaintiffs, | 19-CV-4042 (ALC) (BCM) |
| -against- | **REPORT AND RECOMMENDATION** |
| A&J DELI FISH CORP. d/b/a AURORA FISH GRILL, et al., | **TO THE HON. ANDREW L. CARTER** |
| Defendants. | |

**BARBARA MOSES, United States Magistrate Judge.**

In this action, filed pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and N.Y. Labor Law (NYLL) § 190 *et seq.*, plaintiffs Manuel Arias and Daniel Mejia seek damages for unpaid minimum and overtime wages, statutory penalties, and related relief from defendants A&J Deli Fish Corp. d/b/a Aurora Fish Grill (A&J) and Julio Castillo. Compl. (Dkt. 1) ¶¶ 1-3. Plaintiffs' claims arise out of their employment as kitchen workers at defendants' restaurant, known as Aurora Fish Grill, from approximately 2015 to 2018. *Id.* ¶¶ 7, 9. On October 30, 2020, after defendants failed to respond to plaintiffs' motion for a default judgment, the Hon. Andrew L. Carter, United States District Judge, issued a default judgment as to liability against both A&J and Castillo (Dkt. 57) and referred the matter to me for a damages inquest. (Dkt. 58.)

For the reasons set forth below, I recommend that plaintiffs be awarded damages in the aggregate amount of $174,646 : (a) $86,099 in unpaid minimum and overtime wages ($72,582 for Arias and $13,517 for Mejia); (b) $86,099 in liquidated damages for the unpaid minimum and overtime wages ($72,582 for Arias and $13,517 for Mejia); (c) $1,224 in unpaid "spread of hours" pay (for Arias only); and (d) $1,224 in liquidated damages for unpaid spread of hours pay (for Arias only). In addition, I recommend that Arias be awarded prejudgment interest in the amount of $18.20 per day from December 13, 2016, until the date of entry of judgment, and that Mejia be awarded prejudgment in the amount of $3.33 per day from October 23, 2017, until the date of entry

of judgment. Finally, I recommend that plaintiffs be awarded $34,470 in attorneys' fees and $400 in costs.

I.     **BACKGROUND**

   A.     **Factual Allegations**

Individual defendant Julio Castillo is the "Principal" of corporate defendant A&J, which operated Aurora Fish Grill at 128 East 174th St., Bronx, New York 10457. Compl. ¶¶ 10, 11, 16. Castillo "supervised the work done by Plaintiffs and all other employees" at Aurora Fish Grill, and "determined their rates of pay and work schedules." *Id.* ¶¶ 18, 19. A&J was "engaged in interstate commerce" and had "employees engaged in commerce or in the production of goods for commerce[.]" *Id.* ¶¶ 13-14. From 2016 to 2019, A&J "had an annual gross volume of sales in excess of $500,000." *Id.* ¶ 15.

Plaintiffs were kitchen workers at Aurora Fish Grill. Arias was a grill cook and Mejia was a prep cook. Compl. ¶¶ 1, 7, 9. Arias was hired in March 2015 and Mejia was hired in December 2016. *Id.* ¶¶ 7, 9. Both plaintiffs allege that they regularly worked more than forty hours per week, from the beginning of their employment to its end. *Id.* ¶¶ 24-27, 30. "From approximately March 2015 through May 2016, Arias regularly worked 7 days a week, from approximately 2:30 p.m. to 1:30 a.m., totaling approximately 77 hours of work per week." *Id.* ¶ 24. Thereafter, over the course of his employment, Arias's hours were periodically reduced, such that from July 2018 through the end of his employment on September 14, 2018, he regularly worked only five days per week, "from approximately 6:00 a.m. to 3:00 p.m., totaling approximately 45 hours per workweek." *Id.* ¶ 24, 27. "Mejia regularly worked 6 days per week from approximately 3:00 p.m. to 11:00 p.m., totaling approximately 48 hours per week," throughout his employment. *Id.* ¶ 30.

During most of their employment, plaintiffs were paid fixed weekly salaries. Compl. ¶ 23. Arias "was paid a salary of $350 per week at the start of his employment [in March 2015] and received periodic raises up to $575 per week, which he was paid from about May 2018 to July 2018." *Id.* ¶ 28. Thereafter, from approximately July 2018 through September 14, 2018, Arias "was paid an hourly rate of $13 per hour." *Id.* ¶ 29. From approximately December 2016 to May 2018, Mejia was paid a fixed salary of $450 per week. *See id.* ¶ 31. Later, "from May 2018 until his termination on September 21, 2018, Mejia was paid a salary of $481 per week." *Id.* ¶ 32.

Plaintiffs allege that they were paid below the statutory minimum "at various points during their employment," Compl. ¶ 33, and never received any "overtime bonus" for hours worked in excess of forty per week. *Id.* ¶ 35. They further allege that they were not provided "with an additional hour of pay at the full minimum wage rate whenever their workday exceeded ten hours." *Id.* ¶ 36. Moreover, "[d]efendants failed to provide Plaintiffs with wage notices at the time of hiring and when their rate of pay changed," *id.* ¶ 37, and "did not provide statements to Plaintiffs with each wage payment that, *inter alia,* accurately reflected the Plaintiffs' rates or rates of pay and the number of hours worked per week." *Id.* ¶ 38.

### B.    Procedural History

Plaintiffs filed this action on May 6, 2019, alleging six claims: (1) failure to pay minimum wages in violation of the FLSA, 29 U.S.C. §§ 206(a)(1), *see* Compl. ¶¶ 39-46; (2) failure to pay minimum wages in violation of NYLL § 652 and 12 N.Y. Comp. Codes R. & Regs. (NYCRR) § 146-1.2, *see id.* ¶¶ 47-53; (3) failure to pay overtime compensation, at the rate of one and one-half times their regular rate of pay for each hour worked that exceeded forty hours per week, in violation of the FLSA, 29 U.S.C. § 207(a)(2)(C), *see id.* ¶¶ 54-58; (4) failure to pay overtime compensation in violation of 12 NYCRR § 146-1.4, *see id.* ¶¶ 59-64; (5) failure to provide the

wage notices required by the Wage Theft Prevention Act (WTPA), NYLL § 195(1), *see id.* ¶¶ 65-68; and (6) failure to provide the wage statements required by the WTPA, NYLL § 195(3). *See id.* ¶¶ 69-72.

Defendants appeared on May 28, 2019 (Dkts. 8, 9), after which the district judge referred the case for mediation. (Dkt. 13.) However, on August 16, 2019, plaintiffs requested leave to "move forward with litigation of the case," because defendants were "non-cooperative" in mediation (Dkt. 14), and on August 27, 2019, defendants agreed that "further mediation attempts would not be productive." (Dkt. 16.) On August 28, 2019, the district judge granted plaintiffs' request and directed defendants to respond to the Complaint by September 15, 2019. (Dkt. 17.) Defendants filed their answer on September 16, 2019 (Dkt. 18), and the district judge referred the case to me for general pretrial management. (Dkt. 19.)

On October 23, 2019, I held an initial case management conference and issued a discovery schedule. (Dkt. 23.) On December 4, 2019, the parties reported that they had "exchanged limited discovery," and outlined their plans for additional discovery. (Dkt. 25.) However, on January 17, 2020, defendants' counsel sought leave to withdraw. (Dkt. 28.) On February 20, 2020, I granted the withdrawal motion, advised defendant A&J that "it must defend itself through counsel," and directed all parties to appear at a March 24, 2020 status conference. (Dkt. 35.)

Plaintiffs appeared at the March 24, 2020 conference, which was held by telephone due to the COVID-19 national health emergency, but defendants did not. At the conference, plaintiffs sought leave to move for a judgment of default. *See* (Dkt. 39.) In light of the national health emergency (and the failure of withdrawing counsel to file a proof of service of my February 20, 2020 order), I issued an order on March 25, 2020, scheduling a further teleconference for May 18,

2020, and once again directed defendants to appear. *Id.* Plaintiffs served a copy of the March 25, 2020 order on both defendants (Dkt. 40), as did the Court.

On May 18, 2020, defendants once again failed to appear. (*See* Dkt. 41.) On June 19, 2020, the Clerk of Court issued a Certificate of Default as to both defendants. (Dkt. 47.) On September 21, 2020, plaintiffs moved for a default judgment against defendants. (Dkt. 51.) On October 2, 2020, the district judge issued an Order to Show Cause (Dkt. 55), directing defendants to show cause in writing, no later than October 23, 2020, "why default judgment should not be entered[.]" *Id.* The Order to Show Cause was served on defendants by mail (see Dkt. 56), but they did not respond, and on October 30, 2020, the district judge granted plaintiffs' motion for default judgment "as to liability," and referred the case to me for a damages inquest. (Dkt. 57.)

On November 2, 2020, I issued a Scheduling Order for Damages Inquest, (Sched. Order) (Dkt. 59), directing plaintiffs to file their proposed findings of fact and conclusions of law concerning all damages and other monetary relief permitted in connection with the default judgment by January 7, 2021, and giving defendants until February 8, 2021, to respond if they wished. Sched. Order ¶¶ 1, 8. I further ordered plaintiffs to serve their Proposed Findings, together with all supporting materials and a copy of the Scheduling Order, on the defaulted defendants, by mail, at their last known address. *Id.* ¶ 7.

On March 2, 2021, after requesting and obtaining an extension of time to do so, plaintiffs filed their Proposed Findings (Prop. Findings) (Dkt. 63), to which they attached (among other things) a declaration from each plaintiff, *id*. Exs. B-C; a damages calculation, *id*. Ex. E (Damages Calc.); and relevant billing records from Pechman Law Group PLLC (PLG), plaintiffs' attorneys. *Id*. Ex. G. That same day, plaintiffs filed a certificate of service attesting that they served the Proposed Findings and its exhibits upon defendants by Federal Express. (Dkt. 64.) Arias seeks a

total of $190,607.11, including unpaid minimum, overtime, and spread of hours wages, liquidated

damages, statutory damages under the WTPA, and $25,836.15 in prejudgment interest (calculated

from January 6, 2017 through September 14, 2018). *See* Damages Calc. (Dkt. 63-5) at 6. Mejia

seeks a total of $51,593.31, including unpaid minimum and overtime wages, liquidated damages,

statutory damages under the WTPA, and $5,384.57 in prejudgment interest (calculated from

October 27, 2017 through September 21, 2018). *See id.* at 10.

Defendants did not submit any evidence or otherwise respond to the Proposed Findings.

## II.   ANALYSIS

### A.   Legal Standards

#### 1.   Determining Liability

Following a default, all well-pleaded factual allegations in the complaint as to liability are

"deemed admitted." *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013), *as amended*, (Nov. 26,

2013); *accord City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Vt.*

*Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). However, a default

"only establishes a defendant's liability if those allegations are sufficient to state a cause of action

against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d

Cir. 2015) (summary order). The court must therefore determine "whether the allegations in a

complaint establish the defendants' liability as a matter of law." *Id.* (citing *Finkel v. Romanowicz*,

577 F.3d 79, 84 (2d Cir. 2009)).

If the well-pleaded factual allegations establish the defaulting party's liability, the only

remaining issue is "whether plaintiff has provided adequate support for [the requested] relief[.]"

*Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit*

*Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Conversely, if the well-

pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information. *See U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014) ("[i]t is the . . . [c]omplaint, not the inquest submissions, that establishes defendants' liability") (quoting *Gutman v. Klein*, 2010 WL 4975593, at *10 (E.D.N.Y. Aug. 19, 2010)) (alteration in original); *J & J Sports Prods., Inc. v. Abdelraouf*, 2019 WL 457719, at *2 (E.D.N.Y. Feb. 5, 2019) ("It is the moving party's burden to demonstrate that it is entitled to recovery based on the factual allegations pleaded in the complaint.").

### 2.   Determining Damages

Although the court must accept all well-pleaded facts as true when determining liability, it need not – and indeed cannot – rely on the allegations in plaintiffs' pleadings to establish their damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Rather, plaintiffs are required to substantiate their damages claim with "admissible, authenticated evidence." *McLaughlin v. Barron*, 2018 WL 1872535, at *2 (S.D.N.Y. Jan. 24, 2018), *report and recommendation adopted*, 2018 WL 993627 (S.D.N.Y. Feb. 20, 2018); *see also House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[T]here must be a basis upon which the court may establish damages with reasonable certainty.").

Where, as here, the defendants defaulted prior to the completion of discovery, the court may credit the plaintiffs' "recollections regarding their hours and pay in conducting its inquest." *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended*, (Mar. 29, 2018). However, "the Court must ensure that Plaintiffs' approximations and estimates are reasonable and appropriate." *Id.*; *see also Jemine v. Dennis*, 901

F. Supp. 2d 365, 378 (E.D.N.Y. 2012) (finding that plaintiffs' method of estimating hours worked by averaging the hours listed in the available payroll records with the hours recalled and described in plaintiffs' declarations was reasonable where defendants failed to maintain adequate records).

### B.      Jurisdiction and Venue

I am satisfied that this Court has subject matter jurisdiction over plaintiffs' claims. As plaintiffs sue under a federal statute – the FLSA – subject matter jurisdiction is properly based on 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over their state law claims, which arise out of the same facts and circumstances, pursuant to 28 U.S.C. § 1367.

I am also satisfied as to personal jurisdiction over the defendants, which is "a necessary prerequisite to entry of a default judgment." *Reilly v. Plot Commerce*, 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) (quoting *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016)). Defendants answered the Complaint, participated in discovery (for a time), and never moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(2), thereby waiving any argument regarding the Court's personal jurisdiction over them. *See* Fed. R. Civ. P. 12(h)(1)(B); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999).

### C.      Statute of Limitations

The statute of limitations under the FLSA is two years, *see* 29 U.S.C. § 255(a), unless the violations were "willful," in which case the limitations period increases to three years. *Id.*; *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]" *McLaughlin*, 486 U.S. at 133. In this case, plaintiffs allege willfulness generally, with no supporting facts. *See* Compl. ¶¶ 45, 52, 57, 63, 64. However, "a defendant's default, in itself, may

suffice to support a finding of willfulness." *Gonzalez Mercedes v. Tito Transmission Corp.*, 2018 WL 7291452, at *4 (S.D.N.Y. Dec. 6, 2018) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011)), *report and recommendation adopted sub nom. Mercedes v. Tito Transmission Corp.*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019); *accord Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 315 (S.D.N.Y. 2014). Therefore, the statute of limitations for plaintiffs' FLSA claim is three years, meaning that they can recover damages under the FLSA for work performed on and after May 6, 2016.

The statute of limitations for claims under the NYLL is six years, regardless of willfulness. *See* NYLL § 198(3). Therefore, plaintiffs can recover damages under the NYLL for work performed on or after May 6, 2013.

### D.    Liability for Unpaid Minimum, Overtime, and Spread of Hours Wages

To state an FLSA wage claim, plaintiffs must allege: (1) that they were employees of each defendant sued; (2) that their work "involved inte[r]state activity"; and (3) that they "worked hours for which [they] did not receive minimum and/or overtime wages." *Pineda v. Tokana Cafe Bar Restorant Inc.*, 2017 WL 1194242, at *2 (S.D.N.Y. Mar. 30, 2017); *see also* 29 U.S.C. §§ 206(a), 207(a)(1), 206(s)(1). Additionally, to plead an FLSA overtime claim, plaintiffs must sufficiently allege "40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023) (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). "The requirements to make out a claim under the NYLL mirror the FLSA in most respects," *Reyes v. Lincoln Deli Grocery Corp.*, 2018 WL 2722455, at *3 (S.D.N.Y. June 5, 2018), *order clarified*, 2018 WL 3105070 (S.D.N.Y. June 25, 2018), except that the NYLL "does not require a plaintiff to show that the employer was involved in interstate commerce or had $500,000 in minimum

annual sales," as required for the "interstate commerce" element of an FLSA claim. *Id.* (citing 29 U.S.C. § 203(s)(1)(A)). Finally, to state a claim for spread of hours pay under 12 NYCCR. § 142-1.6, a plaintiff compensated at or below the minimum wage must allege that he worked "more than ten hours per day . . . and [was] not paid an additional hour at the minimum wage rate for days in which he worked 10 or more hours." *Mondragon v. Keff*, 2019 WL 2551536, at *6 (S.D.N.Y. May 31, 2019) (quoting *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 122-23 (E.D.N.Y. 2011)), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019).

### 1.   Employee-Employer Relationship

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The Supreme Court has emphasized that this is an expansive definition with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). Moreover, "an individual may simultaneously have multiple employers for the purposes of the FLSA, in which event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)) (cleaned up).

To determine whether a plaintiff is an "employee" of a particular "employer" for FLSA purposes, courts must examine the "economic reality" of the working relationship. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). In the Second Circuit, courts examine four nonexclusive factors to assess the "economic reality" of an alleged employment relationship, including: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment,

(3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 105 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).

Similarly, under the NYLL, the definition of "employer" is very broad, *see* NYLL § 190(3) ("[e]mployer" means "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service"), and the crucial inquiry in determining whether an employer-employee relationship exists is the "degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 695 (2003)). "There is general support for giving [the] FLSA and the New York Labor Law consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Hart*, 967 F. Supp. 2d at 924 (internal citations omitted); *accord Burns v. Scott*, 635 F. Supp. 3d 258, 275 (S.D.N.Y. 2022), *reconsideration denied*, 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022).

I am satisfied that, for purposes of both the FLSA and the NYLL, plaintiffs have adequately pleaded that they were employed by Castillo as well as A&J. Plaintiffs alleged that Castillo was a principal of A&J and that he exercised sufficient control over its operations to be considered plaintiffs' employer under the FLSA and the NYLL. Compl. ¶¶ 16-19. Among other things, Castillo supervised plaintiffs (and all other employees at Aurora Fish Grill) and determined their rates of pay and work schedules. *Id.* These facts, taken as true for purposes of the inquest, meet the economic reality test under federal and state law.

### 2.    Unpaid Minimum Wages

The federal minimum wage between May 6, 2016, and September 21, 2018 (the aggregate duration of both plaintiffs' employment within FLSA's statute of limitations) was $7.25 per hour. 29 U.S.C. § 206(a)(1). Under the NYLL, however, the minimum wage in New York City increased during plaintiffs' employment. From March 1 to December 30, 2015, the applicable minimum wage was $8.75. NYLL § 652(1). The minimum wage increased to $9 on December 31, 2015, where it remained until December 31, 2016. *Id.* On December 31, 2016, the New York City minimum wage increased to $11 per hour for "large" employers, defined as those with 11 or more employees, and to $10.50 for "small" employers, with 10 or fewer employees. NYLL § 652(1)(a)(i)-(ii). From December 31, 2017 to December 31, 2018, large employers in New York City were required to pay employees $13 per hour and small employers were required to pay $12 per hour. *Id.* Because the Complaint does not state the number of employees at Aurora Fish Grill, I apply the "small employer" minimum wage throughout this Report and Recommendation.

Plaintiffs allege that for most of their employment at Aurora Fish Grill they were paid a flat weekly rate. Compl. ¶¶ 28-29, 31-32. Taking plaintiffs' allegations as true, both of them were, at times, paid a regular hourly rate below the minimum wage required by New York law. For example, Arias was paid a salary of $350 per week at the start of his employment, *id.* ¶ 28, making his regular hourly rate $8.75 ($350 ÷ 40).[1] That rate was lawful in 2015, but became unlawful on

---

[1] Under the FLSA, there is a presumption that a flat weekly salary "covers only the first forty hours." *Perez v. Platinum Plaza 400 Cleaners, Inc.*, 2015 WL 1881080, at *2 (S.D.N.Y. Apr. 24, 2015) (quoting *Guallpa v. N.Y. Pro Signs Inc.,* 2014 WL 2200393, at *4 (S.D.N.Y. May 27, 2014)); *accord Sanchez Gallego v. Adyar Ananda Bhavean Corp.*, 2019 WL 131957, at *2 (S.D.N.Y. Jan. 8, 2019) (Nathan, J.). Although the presumption can be rebutted, in certain cases, with evidence that "the parties 'intend and understand the weekly salary to include overtime hours at the premium rate,'" *Id.* (quoting *Guallpa*, 2014 WL 2200393, at *4), there is no such evidence here. *See also Alvarado v. J.A Vasquez Landscaping Corp.*, 2023 WL 2542702, at *10 (E.D.N.Y. Feb. 14, 2023) ("By virtue of their default, Defendants have failed to rebut the presumption that the weekly salary

January 1, 2016, when the New York minimum wage rose to $9.00 per hour. Mejia alleges that from the start of his employment until approximately May 2018 he was paid $450 per week, making his regular hourly rate $11.25 ($450 ÷ 40). Beginning on January 1, 2018, however, the applicable minimum wage was $12 per hour, even for small employers. Thus, from January through May, 2018, Mejia's regular hourly rate was below the applicable minimum.

Because plaintiffs have provided a "short and plain statement . . . showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and have provided specifics as to the length of their daily shifts and amount paid per shift, they have adequately alleged that they were, at times, paid an hourly rate below the minimum wage required by New York law. Thus, both plaintiffs have pleaded viable minimum wage claims.

### 3.    Unpaid Overtime Wages

Plaintiffs have also pleaded viable overtime claims. Both allege that they regularly worked more than 40 hours per week without any overtime premium. Specifically, Arias alleges that from May 2016 to May 2018, he worked approximately 63 hours per week; that from May 2018 to July 2018 he worked approximately 54 hours per week; and from July 2018 to the end of his employment in September 2018, he worked approximately 45 hours per week, without any overtime pay for hours worked in excess of 40 per week. Compl. ¶¶ 25-27, 35. Similarly, Mejia alleges that throughout his employment, he worked approximately 48 hours per week, without any overtime pay for his overtime hours. *Id*. ¶¶ 30, 35.

---

was for 40 hours of work."). Moreover, for employees in the hospitality industry, state law requires that the employee's regular hourly rate of pay be calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 NYCCR § 146-3.5. "[A]ccordingly the Court calculates Plaintiffs' damages at a rate determined by dividing the weekly salary rate by forty[.]" *Perez*, 2015 WL 1881080, at *2*.

### 4. Unpaid Spread of Hours Wages

In addition to alleging that they were paid below the required minimum wage rate at times, plaintiffs allege that Arias worked 11-hour shifts, seven days a week, from March 2015 through May 2016, Compl. ¶ 24, and that defendants "did not provide . . . an additional hour of pay at the full minimum wage rate whenever their workday exceeded ten hours." *Id.* ¶ 36. As to Arias, therefore, plaintiffs have adequately pleaded a spread of hours claim.

### E. Damages

### 1. Unpaid Minimum and Overtime Wages

Plaintiffs have submitted admissible evidence, in the form of their own sworn declarations, detailing their hours worked and wages paid throughout their employment with defendants. *See* Arias Decl. (Dkt. 63-2); Mejia Decl. (Dkt. 63-3). Additionally, Mejia has submitted records from his check cashing service, showing that he regularly cashed checks from A&J Deli Fish Corp., in the amount of $481, from June through September 2018,[2] as well as a copies of his last paycheck, dated September 21, 2018, in the amount of $481. (Dkt. 63-4.) As discussed in more detail below, plaintiffs' damages evidence supports their claims for unpaid minimum and overtime wages, as well as Arias's claim for spread of hours pay.

Although plaintiffs are eligible to recover damages under both the FLSA and the NYLL, they "may not recover twice." *Gonzalez Mercedes*, 2018 WL 7291452, at *5 (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.*, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010)). Rather, plaintiffs "may recover under the statute which provides the greatest amount of damages." *Id.* (quoting *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *report*

---

[2] On August 11, 2018, Mejia cashed an A&J Deli Fish Corp. check in the amount of $520. (Dkt. 63-4 at ECF p. 2.) Every other check cashed was in the amount of $481. (*Id.*)

*and recommendation adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)). In this case, that statute is the NYLL.

As discussed above, both plaintiffs were paid, for the most part, a flat weekly salary. Consequently, the Court determines their regular rate of pay, for each applicable period, by dividing that weekly salary by forty, *Alvarado*, 2023 WL 2542702, at *10; *Perez*, 2015 WL 1881080, at *2, and determines their overtime rate by "multiplying that number by 1.5." *Alvarado*, 2023 WL 2542702, at *7 n.1. If a plaintiff was paid below the minimum wage for his first forty hours of work in a single workweek, his overtime rate, for that period, is 1.5 times "the relevant minimum wage." *Garcia v. Francis Gen. Constr. Inc.*, 2022 WL 2698434, at *4 (S.D.N.Y. July 12, 2022) (quoting *Martinez v. Dannys Athens Diner Inc.*, 2017 WL 6335908, at *4 (S.D.N.Y. Dec. 5, 2017)).

### a.   Manuel Arias

Arias's declaration is generally consistent with the allegations set forth in the Complaint, although it provides more detail as to his compensation. Arias attests that initially, from approximately March 15, 2015, until May 15, 2016, he worked from approximately 2:30 p.m. until 1:30 a.m., seven days per week, resulting in a 77-hour work week. Arias Decl. ¶¶ 16, 17. Throughout that period he was paid $350 per week, making his regularly hourly rate $8.75. *Id.* ¶ 27. In 2015, the minimum wage in New York was $8.75 per hour. Consequently, Arias has no unpaid minimum wage claim for 2015. However, under New York law, he should have been paid $13.13 per hour ($8.75 x 1.5) for his 37 overtime hours ($485.63 per week). Therefore, for the period March 15 to December 31, 2015 (41 weeks and 5 days), Arias is entitled to $20,255 in unpaid overtime wages.[3]

---

[3] Yearly totals are rounded to the nearest dollar.

The minimum wage increased to $9 per hour on December 31, 2015. Thus, from January 1 through May 15, 2016, Arias should have been paid an extra $0.25 per hour for the first 40 hours per week ($10 per week), and $13.50 per hour ($9 x 1.5) for his 37 overtime hours ($499.50 per week). For this period (19 weeks and 3 days), he is owed $194.30 in unpaid minimum wages and $9,705.29 in unpaid overtime wages, for a total of $9,900.

From May 16 to September 30, 2016, Arias worked for approximately 63 hours per week, Arias Decl. ¶ 19, and was still paid at the rate of $350 per week. *Id*. ¶ 27. As discussed above, he should have been paid an extra $0.25 per hour for the first 40 hours per week ($10 per week), and $13.50 per hour for his 23 overtime hours ($310.50 per week). Thus, for the period May 16 to September 30, 2016, (19 weeks and 5 days), he is owed $197.10 in unpaid minimum wages and $6,119.96 in unpaid overtime wages, for a total of $6,317.

From October 1, 2016, to April 30, 2017, Arias continued to work for approximately 63 hours per week, but received a raise to $425 per week, making his regular hourly rate $10.63. Arias Decl. ¶ 28. This was above the New York minimum wage in 2016 ($9.00) and remained above the New York minimum wage in 2017 ($10.50). Consequently, Arias has no unpaid minimum wage claim for the period October 1, 2016 through April 30, 2017. However, he should have been paid $15.94 per hour ($10.63 x 1.5) for his 23 overtime hours ($366.56 per week). Therefore, for the period October 1 2016, through April 30, 2017 (30 weeks and 2 days), Arias is entitled to $11,099 in unpaid overtime wages.

 From May 1 to October 31, 2017, Arias still worked for approximately 63 hours per week, but received a raise to $500 per week, making his regular hourly rate $12.50, Arias Decl. ¶ 29, which was above the applicable New York minimum wage. Consequently, Arias has no unpaid minimum wage claim for this period. However, he should have been paid $18.75 per hour ($12.50

x 1.5) for his 23 overtime hours ($431.25 per week). Therefore, for the period May 1 through October 31, 2017 (26 weeks and 2 days), Arias is owed $11,338 in unpaid overtime wages.

From November 1, 2017, to May 12, 2018, Arias continued to work for approximately 63 hours per week, but received another raise to $575 per week, making his regular hourly rate $14.38. Arias Decl. ¶ 30. This was above the applicable New York minimum wage in both 2017 and 2018. Consequently, he is not owed any unpaid minimum wages, but he should have been paid $21.56 per hour ($14.38 x 1.5) for his 23 overtime hours ($495.94 per week). Therefore, for the period November 1, 2017 through May 12, 2018 (27 weeks and 4 days), Arias is owed $13,673 in unpaid overtime wages.

For the rest of Arias's employment (from May 13 through September 14, 2018), he acknowledges that he is not owed any minimum or overtime wages. During this period, he was paid $13 per hour for the first 40 hours worked per week, and $21.57 for the hours over 40 that he worked per week. Arias Decl. ¶ 31.

All told, Arias is owed $72,582 in unpaid minimum and overtime wages for the period March 15, 2015, to September 14, 2018.

### b.    Daniel Mejia

Mejia's declaration also tracks the Complaint. He attests that throughout his employment, he regularly worked six days per week, from approximately 3:00 p.m. to 11:00 p.m., resulting in a 48-hour workweek. Compl. ¶¶ 16-17. Initially, from approximately December 2016 to May 2018, he was paid a fixed weekly salary of $450 per week, making his regular hourly rate $11.25. Compl. ¶ 19. The NYLL minimum wage was $9 per hour in 2016 and $10.50 per hour in 2017. Consequently, Mejia is not owed any minimum wages for 2016 or 2017. However, he should have been paid $16.88 per hour ($11.24 x 1.5) for his 8 overtime hours ($135 per week). Consequently,

for the period December 1, 2016 through December 31, 2017 (56 weeks and 4 days), Mejia is entitled to $7,637 in unpaid overtime.

In 2018, the minimum wage increased to $12 per hour, but Mejia's salary remained $450 per week through May of that year. Thus, he should have been paid an extra $0.75 per hour for the first 40 hours ($30 per week), and $18.00 per hour ($12 x 1.5) for his 8 overtime hours ($216 per week). Therefore, for the period January 1 to May 31, 2018 (21 weeks and 4 days), he is owed $647.14 in unpaid minimum wages and $2,914.14 in unpaid overtime wages, for a total of $3,559.

Finally, from approximately June 2018 through the termination of his employment on September 21, 2018, Mejia was paid a fixed weekly salary of $481 per week, making his regular hourly rate $12.03. Compl. ¶ 20. However, according to the records of Mejia's check cashing service, A&J paid him $520 for one week in August 2018 (Dkt. 63-4 at ECF p. 2), making his regular hourly rate $13 per hour for that week. Although he is not owed any minimum wages for this period, Mejia should have been paid $18.04 per hour for his 8 overtime hours ($144.32 per week) for 15 weeks and $19.50 per hour ($156 per week) for the one week he was paid a higher regular rate. Therefore, for the period June 1 to September 21, 2018 (16 weeks), he is owed $2,321 in unpaid overtime wages.

All told, Mejia is owed $13,517 in unpaid minimum and overtime wages for the period December 1, 2016, to September 21, 2018.

### 2. Spread of Hours Pay

Under New York law, employees paid at or below the minimum wage are entitled to an extra hour of pay, at the applicable minimum wage rate, for each day in which the "spread of hours," or the "length of the interval between the beginning and end of [plaintiff's] workday," is greater than ten. 12 NYCRR § 146-1.6. "However, '[o]nly employees making the minimum wage

rate, or less, are eligible for spread-of-hours compensation.'" *Mondragon*, 2019 WL 2551536, at

*9 (quoting *Hernandez v. Delta Deli Mkt. Inc.*, 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019)).

As noted above, Arias attests that from March 2015 to May 2016, he worked seven days

per week, 11 hours per day, for a salary of $350 per week. Arias Decl. ¶¶ 16, 27. For a portion of

that period – from January 1 through May 15, 2016 – his regularly hourly wage ($8.75) was below

the then-applicable minimum wage ($9.00), entitling him to spread of hours pay. For those 136

days, Arias should have been paid an extra hour's pay each day, at then then-prevailing minimum

wage of $9.00. Consequently, Arias is owed $1224 in in spread of hours damages.

Mejia's shifts were never longer than 10 hours. Mejia Decl. ¶ 16. Consequently, Mejia does

not seek, and is not entitled to, any spread of hours damages.

### 3.    Liquidated Damages

Plaintiffs request liquidated damages in the amount of 100% of their actual unpaid wages.

Damages Calc. at ECF pp. 3-10. Under the NYLL, an employer is liable for liquidated damages

equal to the full amount of plaintiffs' unpaid wages, including any unpaid overtime, unless the

employer can demonstrate that it acted in "good faith." NYLL § 198(1-a). Because a showing of

good faith is an affirmative defense under the NYLL, a defaulting defendant cannot carry that

burden. *See* NYLL § 198(1-b); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *4 (S.D.N.Y.

Sept. 16, 2014); *Jaramillo v. Banana King Rest. Corp.*, 2014 WL 2993450, at *5 (E.D.N.Y. July

2, 2014).

"The amount of liquidated damages is equal to 100% of the amount owed to the Plaintiffs

in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-

hours." *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), *report

and recommendation adopted sub nom. Villanueva v. 179 Third Ave. Rest. Inc.*, 2021 WL 2139441

(S.D.N.Y. May 26, 2021). Therefore, Arias is entitled to 100% of his unpaid minimum wage and

overtime damages as liquidated damages, equivalent to $72,582, as well as 100% of his unpaid spread of hours pay as liquidated damages, equivalent to $1,224. Mejia is also entitled to 100% of his unpaid minimum wage and overtime damages as liquidated damages, equivalent to $13,517.

### 4. Statutory Penalties

The WTPA requires employers to provide a written statement "with every payment of wages" that includes, *inter alia*, the dates worked during that pay period, the rate or rates of pay and the basis thereof, gross wages, deductions, allowances, and net wages. NYLL § 195(3). Additionally, "at the time of hiring," employers must provide a written wage notice – in English and in the employee's "primary language" – that includes, among other things, "the rate or rates of pay and basis thereof," and any "allowances, if any, claimed as part of the minimum wage," including tip allowances. NYLL § 195(1). Employees may recover statutory damages of $250 for each workday that his employer failed to provide the wage statement required by § 195(3), and $50 for each workday that his employer failed to provide the wage notice required by § 195(1), not to exceed damages of $5,000 for each violation. NYLL § 198(1-b), (1-d).

In federal court, however, plaintiffs may not automatically collect a statutory penalty upon proof of the corresponding statutory violation. In order to establish standing under the "cases and controversies" clause, *see* U.S. Const. art. III § 2, they must first demonstrate that they suffered a "concrete and particularized injury" as a result of the violation. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also id.* at 2205 (because the existence of a statutory prohibition or obligation does not "simply enact an injury into existence," Article III standing "requires a concrete injury even in the context of a statutory violation") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Put another way, to demonstrate the required concrete and particularized "injury in fact," plaintiffs "cannot solely rely on the fact that the defendant committed a statutory violation." *Neor v. Acacia Network, Inc.*, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing

WTPA claims where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

Here, as in *Neor*, plaintiffs allege that defendants never provided the required wage statements or wage notices, Compl. ¶¶ 26-27, but do not allege any facts showing that the lack of statements or notices confused them about the manner in which their pay was computed or caused any other "injury in fact." Consequently, plaintiffs cannot recover statutory damages under the WTPA. *See Neor*, 2023 WL 1797267, at *4; *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 373 (E.D.N.Y. 2022) (rejecting plaintiff's claim for statutory damages under the WTPA on inquest after default because "the allegations of the Complaint fail to establish a concrete injury resulting from Defendants' alleged failure to provide wage statements"); *Hernandez v. 99 Thai Playground LLC*, 2022 WL 18539303, at *7 (S.D.N.Y. Nov. 28, 2022) (same result, where plaintiff alleged "only a technical statutory violation [of the WTPA], and not a physical, monetary, or cognizable harm"), *report and recommendation adopted*, 2023 WL 1400626 (S.D.N.Y. Jan. 31, 2023).

### 5.    Prejudgment Interest

In addition to liquidated damages, plaintiffs may recover prejudgment interest on their unpaid minimum, overtime, and spread of hours wages under NYLL § 198(1-a). *Andrade v. 168 First Ave Rest. Ltd.*, 2016 WL 3141567, at *10 (S.D.N.Y. June 3, 2016) (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)), *report and recommendation adopted*, 2016 WL 3948101 (S.D.N.Y. July 19, 2016). This is because – unlike liquidated damages – prejudgment interest is intended to "compensate a plaintiff for the loss of use of money." *Reilly*, 181 F.3d at 265 (quoting *Chandler v. Bombardier Capital Inc.*, 44 F.3d 80, 83 (2d Cir. 1994)). However, "prejudgment interest applies only to the amount of compensatory damages and excludes the amount of liquidated damages." *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016) (quoting *Maldonado v. La Nueva Rampa, Inc.*, 2012 WL 1669341,

at *11 (S.D.N.Y. May 14, 2012)), *report and recommendation adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

New York's prejudgment interest rate is 9% per annum, *see* CPLR § 5004, and is computed "on a simple interest basis." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR § 5001(b); *see also Marfia*, 147 F.3d at 91 ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation.") (citation omitted). In NYLL cases, courts often calculate prejudgment interest from the midpoint of the plaintiff's employment. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases).

The median date of the period for which Arias is owed damages is December 13, 2016. Interest has been accruing since that date at the rate of $18.20 per day (($72,528 + $1,224) x .09/365) and will continue to accrue at that rate until judgment is entered.

The median date of the period for which Mejia is owed damages is October 23, 2017. Interest has been accruing since that date at the rate of $3.33 per day ($13,517 x .09/365) and will continue to accrue at that rate until judgment is entered.

## F.    Attorneys' Fees and Costs

Arias and Mejia were represented throughout this litigation by PLG. Plaintiffs request $4,080 for the time of PLG's founder, Louis Pechman, at $600 per hour; $35,040 for the time of associate attorney Laura Rodriguez, at $400 per hour; and $3,250 for the time of paralegal Cristina Brito, at $125, for a total of $42,370 in attorneys' fees. Prop. Findings ¶ 12 & Ex. G.

Both the FLSA and the NYLL allow successful plaintiffs to recover their "reasonable" attorneys' fees. 29 U.S.C. § 216(b); NYLL §§ 198, 663. To determine a "presumptively reasonable fee," the court uses the lodestar method: multiplying a reasonable hourly rate by the reasonable number of hours required by the case. *See Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014); *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### 1. Reasonable Hourly Rate

A reasonable hourly rate is the "rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. Thus, the rate awarded must be "in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (alterations in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Because the presumptively reasonable rate turns on what budget-minded client would be willing to pay to litigate the case effectively, the court is "not called upon to determine whether the attorneys on this case properly command the rates they seek. Rather, we are called upon to determine the *'cheapest* hourly rate an effective attorney would have charged.'" *Douglas v. Anthem Prods., LLC*, 2020 WL 2631496, at *3 (S.D.N.Y. May 26, 2020) (quoting *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 364 (S.D.N.Y. 2018)).

Generally speaking, "[c]ourts in this District have determined that a fee ranging from $250 to $450 [per hour] is appropriate for experienced litigators in wage-and-hour cases." *Chen v. Shanghai Café Deluxe, Inc*., 2023 WL 2401376, at *15 (S.D.N.Y. Mar. 8, 2023) (citation and

internal quotation marks omitted); *see also De La Cruz v. Trejo Liquors, Inc.,* 2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019) ("For partners or heads of small law firms practicing in this area, the Court has usually approved hourly rates in the $300 to $450 range.") (citation omitted), *report and recommendation adopted*, 2020 WL 4432298 (S.D.N.Y. July 30, 2020); *accord Salomon v. 4221 Hylan Boulevard Corp.,* 2021 WL 7908043, at *7 (E.D.N.Y. May 7, 2021); *Cortes v. Juquila Mexican Cuisine Corp.*, 2021 WL 1193144, at *2 (E.D.N.Y. Mar. 29, 2021); *Douglas*, 2020 WL 2631496, at *3; *Hernandez v. Boucherie LLC*, 2019 WL 3765750, at *4 (S.D.N.Y. Aug. 8, 2019). "For labor and employment lawyers who have practiced for eight to ten years, the prevailing hourly rate is between $250-$350." *Espinosa v. Perez*, 2020 WL 2950978, at *4 (S.D.N.Y. Jan. 27, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 1130743 (S.D.N.Y. Mar. 9, 2020).

To be sure, these ranges are not uniformly observed. District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). Even in non-class cases, courts in this District have awarded as much as $600 per hour to experienced wage-and-hour attorneys, often after trial, *see, e.g.*, *Williams v. Epic Security Corp.*, 368 F. Supp. 3d 651, 658-69 (S.D.N.Y. 2019) ($600 per hour for lead trial counsel with 32 years of experience), or on an unopposed fee motion after default. *See, e.g.*, *Augusto Corrales v. AJMM Trucking Corp.*, 2020 WL 1911189, at *4 (S.D.N.Y. Apr. 20, 2020) (awarding PLG's requested rates, including $600 per hour for attorney Pechman and $225 per hour for two junior associates). Nothing about this case, however, supports a fee award calculated at significantly above-market rates.

Attorney Pechman, a 1983 graduate of Fordham Law School, had 36 years of experience when this case was filed, including significant wage-and-hour experience, *see* Prop. Findings at 9,

¶¶ 5, 7, and his work in that field is well-regarded in this District. *See, e.g.*, *Salomon*, 2021 WL 7908043, at *7 ("The court acknowledges Pechman's significant and specialized experience, as well as his reputation in this District."). His fee applications have frequently resulted in awards "slightly above the rates currently awarded in this District." *Id*. In all but a handful of recent cases, however, courts have rejected his request for a rate of $600 per hour and settled at or near the rate of $500 per hour. *Id*. (collecting cases); *see also Cortes*, 2021 WL 1193144, at *2 (acknowledging "Pechman's significant and specialized experience, as well as his reputation in this District," but reducing his rate to $500 per hour); *Hernandez*, 2019 WL 3765750, at *4 (awarding Pechman "a very generous $500 per hour"). In this case, which did not present any novel or complex questions, and was won by default, after only a few months of discovery, I conclude that $500 per hour is a reasonable rate for attorney Pechman. *See Lucero v. Shaker Contractors, Corp.*, 2023 WL 4828640 (S.D.N.Y. Apr. 21, 2023) (finding reductions appropriate where defendants defaulted and the case did not involve a "novel or complex legal factual question"), *report and recommendation adopted as modified*, 2023 WL 4760598 (S.D.N.Y. July 26, 2023), and *report and recommendation adopted as modified*, 2023 WL 4936225 (S.D.N.Y. July 27, 2023); *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 324 (S.D.N.Y. 2014) (reducing hourly rate of principal attorney to reflect "the relatively straightforward procedure of this case and the absence of novel or complex issues arising from the claims").

Attorney Rodriguez, an associate attorney at PLG who graduated from Fordham Law School in 2013, had approximately six years of experience when this case was filed and seven by the time the district judge granted plaintiffs' default motion. Prop. Findings at 10-11, ¶ 10. Given her relatively limited experience, and the straightforward nature of the case, her requested rate of $400 per hour is not reasonable. *See Cortes*, 2021 WL 1193144, at *2 (noting that $400 per hour

was above the rates "typically awarded" for senior associates "in wage and hour cases in this District," and setting Rodriguez's reasonable hourly rate at $325 in a case where she served as "lead counsel"); *Salazar v. 203 Lena Inc.*, 2020 WL 5627118, at *12 (S.D.N.Y. Sept. 18, 2020) (reducing Rodriguez's hourly rate to $250), *report and recommendation adopted*, 2020 WL 6257158 (S.D.N.Y. Oct. 23, 2020). In this case, Rodriguez performed the bulk of the legal work, including drafting motion papers, making court appearances, and preparing the Proposed Findings – and the quality of that work was good. Accordingly, while I cannot accept her requested rate of $400 per hour, I recommend that attorney Rodriguez's rate be set somewhat above the customary range for attorneys with similar experience, at $325 per hour.

Paralegal Brito was a law student during the pendency of this case, graduating from CUNY School of Law in December 2020, shortly after plaintiffs' default motion was granted. Prop. Findings at 11, ¶ 11. Before that, she worked as a paralegal at PLG, and its predecessor firm, for eight years. *Id*. Her requested rate of $125 per hour is higher than the norm for experienced paralegals in wage and hour cases. *See, e.g.*, *Choi v. AHC Med. Servs., PLLC*, 2023 WL 5612394 (E.D.N.Y. Aug. 1, 2023) (reducing paralegal rate from $120 to $100 per hour in post-default fee motion), *report and recommendation adopted*, 2023 WL 5613718 (E.D.N.Y. Aug. 30, 2023); *Thompson v. Hyun Suk Park*, 2020 WL 5822455 (E.D.N.Y. Sept. 1, 2020) (collecting cases awarding paralegals $75-90 per hour), *report and recommendation adopted*, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020). In *Salomon*, 2021 WL 7908043, at *8, which was also decided post-default, the court reduced Brito's rate from $125 to $100 per hour, even though she "assisted with the drafting of pleadings" as well as performing ministerial tasks. Accordingly, I recommend that Brito's hourly rate be set at $100 for purposes of the case at bar.

### 2.    Reasonable Hours Expended

An application for attorneys' fees must include "contemporaneous time records" that specify "the date, the hours expended, and the nature of the work done." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). In this case, PLG's time records reflect that attorney Pechman spent 6.8 hours working on this case, attorney Rodriguez spent 87.6 hours, and paralegal Brito spent 26 hours, for a total of 120.4 hours (representing $42,370.00 at plaintiffs' requested rates). Prop. Findings at 11, ¶ 12; *id*. Ex. G.

The key inquiry in determining the reasonable number of hours necessary for a case is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Courts should engage in "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). However, because "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection," courts "need not, and indeed should not, become green-eyeshade accountants." *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Thus, when "dealing with items that are 'excessive, redundant, or otherwise unnecessary, . . . the [district] court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id. at* 54-55 (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)); *accord Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010).

I have examined PLG's time records, which include the hours expended, dates of work, and brief descriptions of the tasks that Pechman, Rodriguez, and Brito performed. On a few occasions, both Pechman and Rodriguez performed a task that only required one attorney, *see, e.g.*, Prop.

27

Findings Ex. G at 3 (showing that both Pechman and Rodriguez called defendant Castillo, pre-filing, "to advise to stop communicating with client and hire counsel"), or concurrently billed time for consulting one another as to vaguely described matters, *see, e.g.*, *id.* at 17 (showing that Pechman and Rodriguez both billed for a 12-minute discussion of "next steps"). Overall, however, I found little "fat" in the hours expended by PLG on this case, and do not recommend any discounts to the total number of hours billed by plaintiffs' counsel.

In this regard, I note that while 120.4 hours of attorney and paralegal time may seem high for a case in which defendants defaulted prior to the completion of discovery, some of those hours were spent on trying to *avoid* litigation, for which plaintiffs should not be penalized. *See Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) ("Courts in this circuit typically award attorneys' fees for pre-filing preparations.") (collecting cases); *Long v. HSBC USA INC.*, 2016 WL 4764939, at *1 (S.D.N.Y. Sept. 13, 2016) (awarding $713,471.20 in fees after the parties agreed to a $6.9 million FLSA class settlement "as a result of pre-litigation negotiations," including a private mediation). PLG made significant efforts, beginning in late 2018, to negotiate a resolution of plaintiffs' claims without resort to litigation. *See* Prop. Findings Ex. G at 2-10; Pechman Decl. (Dkt. 52) ¶¶ 3-4. In February 2019, the parties agreed to mediate, and in March 2019, attorney Rodriguez prepared for the mediation by meeting with her clients, reviewing their records, and drafting a mediation statement. *See* Prop. Findings Ex. G at 7-9. At the end of March, however, defendants cancelled the mediation and rebuffed PLG's "last effort to negotiate before filing." *Id.* at 10. Only then did Rodriguez draft the Complaint and file this action. *Id.* at 10-11.

Consequently, I recommend that plaintiffs be awarded attorneys' fees in the amount of $34,470, as shown below:

| Name | Louis Pechman | Laura Rodriguez | Cristina Brito |
|---|---|---|---|
| Hourly Rate | $   500 | $   325 | $   100 |
| Hours | 6.8 | 87.6 | 26 |
| Total Sums | $3,400 | $28,470 | $2,600 |

### 3.    Costs

In addition to attorneys' fees, plaintiffs request reimbursement of the $400 in filing fee in this action. Prop. Findings ¶ 14; *id*. Ex. G at 27. I recommend this request be granted.

## III.   CONCLUSION

For the reasons stated above, I recommend, respectfully, that plaintiffs be awarded damages in the aggregate amount of $174,646, plus prejudgment interest, as follows:

For **Manuel Arias**: $72,582 in unpaid minimum and overtime wages, $72,582 in liquidated damages for the unpaid minimum and overtime wages, $1,224 in unpaid spread of hours pay, $1,224 in liquidated damages for unpaid spread of hours pay, and prejudgment interest in the amount of $18.20 per day from December 13, 2016, until the date of entry of judgment.

For **Daniel Mejia**: $13,517 in unpaid minimum and overtime wages, $13,517 in liquidated damages for the unpaid minimum and overtime wages, and prejudgment in the amount of $3.33 per day from October 23, 2017, until the date of entry of judgment.

In addition, I recommend that plaintiffs be awarded $34,320 in attorneys' fees and $400 in costs. The judgment should run jointly and severally against defendants **A&J Deli Fish Corp. d/b/a Aurora Fish Grill** and **Julio Castillo**.

The Clerk of Court is respectfully directed to mail copies of this Report and Recommendation to the defaulted defendants, addressed as follows:

A&J Deli Fish Corp.
Julio Castillo
c/o Aurora Fish Grill
128 E. 174th Street
Bronx, NY 10457

Dated: New York, New York
       December 14, 2023

_____
**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Andrew L. Carter at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Carter. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).